COMMONWEALTH OF MASSACHUSETTS
UNITED STATES DISTRICT COURT

DOCKET NO. 4:18-CV-40121-TSH

ALFRED MORIN,

    Plaintiff

v.

WILLIAM LYVER, in his official capacity as NORTHBOROUGH CHIEF OF POLICE,

    Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Now comes the plaintiff, Alfred Morin, by and through undersigned counsel, and submits his Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment.

Dated: April 25, 2019

Respectfully submitted,

Alfred Morin,
By His Attorney,

/s/ J. Steven Foley
J. Steven Foley
11 Pleasant St #100
Worcester MA 01609
BBO: 685741
508-754-1041
508-739-4051 (fax)
JSteven@attorneyfoley.com

## Table of Contents

**PRELIMINARY STATEMENT** ................................................................................................. 1

**STATEMENT OF FACTS** ......................................................................................................... 1

**ADDITIONAL FACTS** ............................................................................................................. 3

**ARGUMENT** ............................................................................................................................. 3

    **STANDARD OF REVIEW** .................................................................................................. 3

    **IMPLICATION OF SECOND AMENDMENT** ................................................................... 4

    **PROHIBITIONS BASED ON CRIMES OF VIOLENCE** ...................................................... 5

**CONCLUSION** ......................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

District of Columbia v. Heller, 554 US. 570 (2008) .................................................................. 6, 9

Ezell v. City of Chicago, 651 F.3d 684 (7th Cir.2011) ................................................................ 4, 7

Georgia-Carry.Org, Inc. v. Georgia, 687 F.3d 1244 (11th Cir.2012) ............................................ 4

Gould v. Morgan, 907 F. 3d 659 (1st Cir. 2018) ............................................................................ 4

Heller v. District of Columbia, 670 F.3d 1244 (D.C.Cir.2011) ..................................................... 4

Hightower v. City of Boston, 693 F. 3d 61 (1st Cir. 2012) ............................................................ 7

National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F.3d 185 (5th Cir.2012) ....................................................................................................... 4, 5

Schrader v. Holder, 704 F.3d 980 (D.C. Cir 2013) ........................................................................ 8

United States v. Armstrong, 706 F.3d 1 (1st Cir.2013) .................................................................. 6

United States v. Booker, 644 F.3d 12 (1st Cir. 2011) ..................................................... 6, 8, 9, 10

United States v. Chester, 628 F.3d 673 (4th Cir.2010) .................................................................. 3

United States v. Chovan, 735 F.3d 1127 (9th Cir.2013) ................................................................ 4

United States v. Greeno, 679 F.3d 510 (6th Cir.2012) .................................................................. 4

United States v. Marzzarella, 614 F.3d 85 (3d Cir.2010) .............................................................. 3

United States v. Reese, 627 F.3d 792 (10th Cir.2010) ................................................................... 4

United States v. Rene E., 583 F.3d 8 (1st Cir.2009) ...................................................................... 5

United States v. Skoien, 614 F.3d 638 (7th Cir. 2010) ............................................................... 7, 8

Woollard v. Gallagher, 712 F.3d 865 (4th Cir.2013) ..................................................................... 7

**Statutes**

18 U.S.C. § 922(g)(9) ................................................................................................................. 6, 8
M.G.L. c. 140§ 129B(1)(ii)(d) ....................................................................................................... 4

M.G.L. c. 140§ 131(d)(ii)(d) ................................................................................................ 4, 7, 8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# PRELIMINARY STATEMENT

The Defendant challenges the constitutionality of a blanket prohibition of the issuance of a License to Carry Firearms or a Permit to Purchase Firearms for any person who has been convicted of a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed. Massachusetts law prohibits issuance of a License to Carry Firearms, Permit to Purchase Firearms, or Firearms Identification Card to any person convicted of a felony, crime of violence, or controlled substance violation. A conviction of a weapons violation that is not a felony, not a crime of violence, nor a violation of a controlled substance law is necessarily a *malum prohibitim*, technical violation with no *mens rea* nor element of recklessness.

# STATEMENT OF FACTS[1]

Alfred Morin (Plaintiff) was issued a Class A license to carry firearms in 1985 by the Commonwealth of Massachusetts. He held the license until it expired in 2008. Morin's habit was to carry a loaded pistol on his person at all times, in a holster strapped to his ankle. In October of 2004, he drove from Massachusetts to Washington, DC to visit his daughter, and he carried his loaded pistol with him. He was not aware that his Massachusetts license was not recognized in the District of Columbia. While entering a Smithsonian Museum, he noticed a sign banning

---

[1] The facts in this section are taken from a Memorandum and Order on Plaintiff's Motion for Summary Judgment, The Commonwealth's Cross-Motion for Summary Judgment, and Mark Leahy's Cross-Motion for Summary Judgment, Docket Number 4:15-CV-40048-TSH dated May 18, 2016, included as SMF-1 and Exhibit A

firearms. He approached a guard and asked if he could check his weapon. The guard contacted the police, who arrested him and charged him with carrying a pistol without a license, possession of an unregistered firearm, and unlawful possession of ammunition. Morin pled guilty to attempting to carry a pistol without a license, in violation of D.C. Code § 22-3204(a)(1), and possession of an unregistered firearm, in violation of D.C. Code § 6-2376. He was sentenced to sixty days in prison on each count, to run concurrently, as well as three months of supervised probation and twenty hours of community service. The prison sentence was suspended. In February of 2008, Morin applied to renew his Class A license in Massachusetts. The renewal application form required him to indicate whether he had, "in any state or federal jurisdiction," been convicted of a "violation of any law regulating the use, possession, ownership, sale, transfer, rental, receipt or transportation of weapons for which a term of imprisonment may be imposed." (Docket No. 28-2 at 3.) Morin answered "no." The Northborough Police Department ran a fingerprint check, discovered his convictions, and denied his license in accordance with Mass. Gen. Laws ch. 140, § 131(d)(ii)(D).

Seven years later, in February of 2015, Morin submitted another application for a Class A license. This time, when asked the same question about previous firearms-related convictions, he answered "yes." Because of these convictions, the Chief of Police, Mark Leahy, once again denied his application. The applicable statute prohibits the issuance of a Class A license to a "prohibited person," which includes a person who "has, in any other state or federal jurisdiction, been convicted . . . for the commission of . . . a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed." Mass. Gen. Laws ch. 140, § 131(d)(ii)(D).

On March 25, 2015, Morin brought [a] suit against Leahy in his official capacity as the Northborough Chief of Police, challenging the constitutionality of Mass. Gen. Laws ch. 140, §§ 129B(1)(i)(D), 129B(1)(ii)(D), and 131(d)(ii)(D).

## ADDITIONAL FACTS

The prior suit was dismissed by This Court, in part, because the plaintiff sought a License to Carry, the least restrictive license available in Massachusetts, allowing him to carry concealed firearms in public, and had not applied for an FID Card and Permit to Purchase Firearms. (SMF-2).

Dr. Morin subsequently applied for and FID Card and Permit to Purchase Firearms, but on April 4, 2018, Defendant Lyver wrote to Dr. Morin that he must deny his application for a Permit to Purchase Firearms as the 2004 conviction is a "statutory disqualifier under Mass. Gen. Laws ch. 140, § 131(d)(ii)(D) and Mass. Gen. Laws ch. 140, § 131A". (SMF-3)

## ARGUMENT

### STANDARD OF REVIEW

When analyzing a constitutional challenge under the Second Amendment, a majority of the courts of appeals have adopted a two-step approach, first set forth by the Third Circuit:

> First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.... If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means ends scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.

United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir.2010). The Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, and D.C. Circuits have explicitly adopted this approach. United States v.

3

Chester, 628 F.3d 673, 680 (4th Cir.2010); National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F.3d 185, 194-95 (5th Cir.2012); United States v. Greeno, 679 F.3d 510, 518 (6th Cir.2012); Ezell v. City of Chicago, 651 F.3d 684, 703-04 (7th Cir.2011); United States v. Chovan, 735 F.3d 1127, 1136 (9th Cir.2013); United States v. Reese, 627 F.3d 792, 800-01 (10th Cir.2010) Georgia-Carry.Org, Inc. v. Georgia, 687 F.3d 1244, 1260 n. 34 (11th Cir.2012); Heller v. District of Columbia, 670 F.3d 1244, 1252 (D.C.Cir.2011) (Heller II).

Although the First Circuit has not expressly adopted this approach, it chose to do so when analyzing Gould v. Morgan, 907 F. 3d 659 (1st Cir. 2018) . In other cases in which it has directly analyzed Second Amendment issues, it adopted either the first or second step of the analysis performed by the other circuits. For example, in United States v. Rene E., 583 F.3d 8 (1st Cir.2009), the court concluded that the federal statute criminalizing firearm possession by juveniles did not violate the Second Amendment because it was one of the "longstanding prohibitions" that Heller did not call into question. 583 F.3d at 16. While Rene E. did not specifically hold that the statute only burdened conduct outside the scope of Second Amendment protection, the analysis it followed was almost identical to those of other circuits when conducting the first step in their Second Amendment analysis. Compare Rene E., 583 F.3d at 13-16 (surveying nineteenth-century state laws and the founders' attitudes on juvenile handgun possession) with National Rifle Ass'n of Am., 700 F.3d at 200-204 (surveying founding-era attitudes and nineteenth-century opinion on juvenile firearm possession).

## IMPLICATION OF SECOND AMENDMENT

The lifetime handgun ban imposed on the Plaintiff under M.G.L. c. 140§ 131(d)(ii)(d) implicates the core Second Amendment right to possess a handgun in the Plaintiff's home for

defense of hearth and home. Although the statute enabling the issuance of an FID card prohibits possession of handguns anywhere but on a licensed range, there are no criminal penalties imposed for possession of a handgun in the home for the holder of an FID Card. The issue here is that the plaintiff has no legal method to acquire a handgun. Massachusetts law imposes criminal penalties for anyone selling a handgun to a person without a License to Carry or Permit to Purchase. Although the FID card may allow the holder to possess a handgun in his home, the holder has no ability to obtain a handgun in order to possess it, and thus is prevented from possessing a handgun in his home. Therefore, the present Court should move to the second stage and determine whether the right has been infringed. The court in Heller held that the absolute ban on handgun possession for self-defense in the home "would fail constitutional muster" under "*any* of the standards of scrutiny" applied to the enumerated constitutional rights. District of Columbia v. Heller, 554 US. 570 (2008) at 628-29 (emphasis added). The Heller Court expressly left for 'future evaluation' the precise level of scrutiny to be applied to laws trenching upon Second Amendment rights." United States v. Booker, 644 F.3d 12,22 (1st Cir. 2011) (quoting Heller, 554 U.S. at 626,634-35). Nevertheless, the Heller Court expressly declined to apply an "interest-balancing" approach.

### PROHIBITIONS BASED ON CRIMES OF VIOLENCE

In United States v. Booker, 644 F.3d 12 (1st Cir.2011), and United States v. Armstrong, 706 F.3d 1 (1st Cir.2013), the First Circuit upheld the federal statute criminalizing firearm possession by persons convicted of a misdemeanor crime of domestic violence. In doing so, it found that the statute, although falling within one of the "presumptively lawful" categories of firearm regulation in Heller, required some form of means-ends scrutiny because it was a new categorical limit on the Second Amendment right. *Booker,* 644 F.3d at 25; *Armstrong,* 706 F.3d

at 8. In Hightower v. City of Boston, 693 F. 3d 61 (1st Cir. 2012), the court concluded that under any standard of heightened scrutiny, revoking an individual's license to carry a concealed weapon did not violate the Second Amendment when based on an inaccurate firearms-license application. 693 F.3d at 74. Thus, the analysis in *Booker, Armstrong,* and *Hightower* was similar to the analysis performed by other circuits in the second step of their Second Amendment framework. Compare *Hightower,* 693 F.3d at 73-76 (regulation upheld under any standard of heightened means-ends scrutiny) with Woollard v. Gallagher, 712 F.3d 865, 880-81 (4th Cir.2013) (regulation upheld under intermediate scrutiny).

In United States v. Skoien, 614 F.3d 638 (7th Cir. 2010), the Seventh Circuit considered a Second Amendment challenge to prosecution under 18 U.S.C. § 922(g)(9), which prohibits possession of firearms by persons convicted of a domestic-violence misdemeanor. In Skoien, the Court determined that the appropriate level of scrutiny to be applied was a "form of strong showing," because the Second Amendment claim was not being made by a "law-abiding, responsible citizen," the case did not involve the central self-defense component of the right." Ezell v. City of Chicago, 651 F.3d 684,708 (7th Cir. 2011)(citing Skoien, 614 F.3d at 645). In Ezell, however, the Court found that the plaintiffs were "the 'law-abiding, responsible citizens' whose Second Amendment rights are entitled to full solicitude under Heller, and their claim comes much closer to implicating the core of the Second Amendment right . . . suggesting a more rigorous showing than that applied in Skoien should be required, if not quite 'strict scrutiny.'" U.S. v. Skoien, 651 F3d at 708.

In United States v. Booker, 644 F.3d 12,22 (1st Cir. 2011), the First Circuit, like the Seventh Circuit in Skoien, added convicted domestic violence misdemeanants to the list of individuals that could be categorically denied their Second Amendment Rights. The Booker

6

court relied on analysis performed by the Skoien Court and quoted heavily from the Skoien decision. Like the Skoien Court, Booker noted that the criminal defendant appellants in that case "manifestly are not 'law-abiding responsible citizens." United States v. Booker, 644 F.3d at note 17. Immediately after noting the non-law-abiding nature of the criminal defendants in that case, the First Circuit concluded, "as did the Seventh Circuit, that a categorical ban on gun ownership by a class of individuals must be supported by some form of 'strong showing,' necessitating a substantial relationship between the restriction and an important governmental objective." Booker at 25.

In the present case, the Court is presented with a "law-abiding responsible citizen" whose core right to possess a handgun in his home for self-defense is directly affected. See Schrader v. Holder, 704 F.3d 980 (D.C. Cir 2013)(if Appellant had only one conviction for a fist fight forty years ago and no other encounter with the law, "we would hesitate to find Schrader outside the class of 'law abiding, responsible citizens' whose possession of firearms is, under *Heller*, protected by the Second Amendment."). Unlike Schrader, whom the court found to be law-abiding despite a single crime of violence, Dr. Morin never committed a crime of violence, or a crime of recklessness, or a crime involving any sort of intent at all. Dr. Morin honestly believed what he was doing was perfectly legal. He has no other disqualifying criminal convictions. He has lived a successful and productive life and contributed to society. Accordingly, this Honorable Court should analyze M.G.L. c. 140 § 131(d)(ii)(d) lifetime handgun ban through "text, history, and tradition" or, at a minimum, as indicated in Ezell, something more rigorous that the scrutiny applied in Skoien or Booker, "if not quite "strict scrutiny". Therefore, the Commonwealth has the burden of establishing at least a strong public interest in its lifetime handgun ban on the

Plaintiff, and must establish a close fit between the legislation and its broad application to its citizens to justify such a substantial encumbrance on individual rights.

As applied to Plaintiff in this matter, § 131(d)(ii)(d) cannot survive constitutional scrutiny under a "text, history and tradition" test, strict scrutiny, or a "strong showing" review. To deprive Plaintiff of his Second Amendment right, the Commonwealth must rely on the <u>Heller</u> footnotes stating that the core Second Amendment rights should not "be taken to cast doubt on longstanding prohibitions on the possession of forearms by felons and the mentally ill. . .," and that these "presumptively lawful regulatory measures" are examples and "does not purport to be exhaustive." <u>U.S. v Booker</u>, 644 F.3d 12, 23 (1st Cir. 2011) citing <u>District of Columbia v. Heller</u>, 554 US. 570, 627 n.26 (2008). As established below, however, Plaintiff does not fall under the felon or violent misdemeanant categories for firearm disentrancement.

In the present matter, the Commonwealth has the burden to establish that Plaintiff's non-violent misdemeanor convictions with no *mens rea* places him under the category of "felons" or the "violent misdemeanant" categories to justify the lifetime handgun ban, Because there are no known federal or Massachusetts cases on point, the Court should look to the distinguishable, but instructive discussion in <u>U.S. v. Booker</u>, 644 F.3d 12 (1st Cir. 2011).

In <u>Booker</u>, the First Circuit addressed the constitutionality of federal statute 18 U.S.C. §922(g)(9), a "law that prohibits individuals convicted of a 'misdemeanor crime of domestic violence from possessing, shipping, or receiving firearms." <u>U.S. v. Booker</u>, 644 F.3d at 13. The <u>Booker</u> Court held that an offense with a *mens rea* of recklessness may qualify as a "misdemeanor crime of domestic violence" under § 922(g)(9)., and therefore upheld the prohibition. Here, the Plaintiff violated a strict liability statute, with absolutely no *mens rea* and does not fall under the umbra, or even penumbra, of a violent criminal.

8

## CONCLUSION

In conclusion, § 131(d)(ii)(d) unconstitutionally groups together non-violent misdemeanants, violent misdemeanants, and felons. While prohibitions of felons and those convicted of violent crimes may have historic constitutional bases, no such history or tradition exists for banning non-violent misdemeanants such as the Plaintiff from exercising his inherent Second Amendment rights. Furthermore, the basis for the categorical lifetime handgun ban for non-violent conviction of a strict liability crime somehow related to a particular class of inanimate objects has no relation to a legitimate and defined legislative purpose, and a link between a strict liability violation and violence cannot be established.

Based on the foregoing analysis, Plaintiff's motion for Summary Judgment should be granted, and this Honorable Court should find that M.G.L. c. 140 § 131(d)(ii)(d) is unconstitutional for violating the Plaintiff's constitutional right to keep and bear arms.


Dated: April 25, 2019

                                          Alfred Morin,
                                          By His Attorney,

                                          /s/ J. Steven Foley
                                          J. Steven Foley
                                          11 Pleasant St #100
                                          Worcester MA 01609
                                          BBO: 685741
                                          508-754-1041
                                          508-739-4051 (fax)
                                          JSteven@attorneyfoley.com


CERTIFICATE OF SERVICE

I, J. Steven Foley, hereby certify that this document filed through the ECF system was served on all counsel of record.

Date: April 25, 2019                                     /s/ J. Steven Foley
                                                                     J. Steven Foley