UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 4:18-CV-40121-TSH

ALFRED MORIN,

      Plaintiff

v.

WILLIAM LYVER, in his official capacity as
Northborough Chief of Police

      Defendant

And

THE COMMONWEALTH OF
MASSACHUSETTS

      Intervenor Defendant

DEFENDANT CHIEF OF POLICE
WILLIAM LYVER'S MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR
SUMMARY JUDGMENT

## I. INTRODUCTION

Town of Northborough Chief of Police Chief William Lyver ("Chief Lyver") opposes

plaintiff Alfred Morin's ("Morin") Motion for Summary Judgment and moves for summary

judgment in his favor. By way of background, in this case[1], Morin claims that Chief Lyver

violated his right to bear arms under the Second Amendment to the United States Constitution by

his statutorily mandated firearms licensing decision pursuant to G.L. c.140, §§131(d)(ii)(D) and

131A, based the fact that Morin is disqualified by state law due to his prior criminal convictions

for firearms offenses in Washington D.C. Morin seeks declaratory and injunctive relief relative

to said statutory provisions. As outlined in detail in the Intervenor-Defendant Commonwealth's

Opposition and Cross-Motion for Summary Judgment detailing the relevant statutory

---

[1] This is the second appeal filed by Morin against the Northborough Chief. The first case previously before this
Court involved the denial of his license to carry pursuant to G.L. c. 140, §131 was decided in favor of former
Northborough Police Chief Mark Leahy and the Commonwealth, and affirmed by the First Circuit Court of Appeals,
Morin v. Leahy and Commonwealth of Massachusetts, 862 F.3d 123 (2017).

background at issue, Morin seeks redress against Chief Lyver for doing exactly what the relevant

Massachusetts firearms licensing statutes, G.L. c.140, §§131(d)(ii)(D) and 131A, require the

Police Chief to do—deny a firearms license to carry and permit to purchase to an individual who

is statutorily disqualified based on a prior criminal conviction for firearms offenses.  Despite this

statutorily mandated process dictated by state law set forth by the Legislature, with which Chief

Lyver fully complied, Morin now seeks injunctive and declaratory relief, as well as attorneys'

fees, against him, simply because he complied with Massachusetts law and not based upon the

application of any Town of Northborough custom or policy.

Indeed, in light of Morin's outright challenge to state law, the Attorney General has

intervened in this case to defend the constitutionality of G.L. c. 140, §§131(d)(ii)(D) and 131A.

As discussed *infra*, Chief Lyver expressly incorporates the Commonwealth's arguments with

respect to the constitutionality and validity of G.L. c. 140, §§131(d)(ii)(D) and 131A (Docket

Entry 26).  In addition, Chief Lyver asserts that, significantly, there are no disputed facts and he

did not cause a violation of Morin's constitutional rights through any municipal custom and

policy of the Town of Northborough so as to justify relief pursuant to 42 U.S.C. §1983 in accord

with the Supreme Court's decision in Monell v. Department of Social Services, 436 U.S. 658,

691 (1978).  Rather, where, as here, a municipal entity merely executes the non-discretionary

statutory mandate there can be no liability on the part of the municipality.[2]

## II.    STATEMENT OF FACTS

The relevant facts underlying this case are set forth in the plaintiff and the

Commonwealth of Massachusetts' Local Rule 56.1 Statement of Material Facts Not in Dispute,

---

[2] It is also the Town of Northborough and Chief Lyver's position that they should not be held responsible for any award of attorneys' fees or costs that may be imposed by the Court since the Attorney General's office moved to intervene in this case and, as a result, as a party to this case, is ultimately responsible for defending the constitutionality of the state statutory provisions that governed Chief Lyver's actions.

and exhibits, (hereinafter "SOF") previously filed.  For purposes of this Motion only, Chief

Lyver incorporates the facts set forth in the Commonwealth's Statement of Material Facts Not in

Dispute and the Commonwealth's response to the Plaintiff's Statement of Materials Facts.

(Docket Entry 27).

### III.    ARGUMENT

#### A.  Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A material

fact is one with the "potential of changing a case's outcome."  Doe v. Trs. of Bos. Coll., 892 F.3d

67, 79 (1st Cir. 2018); Henderson v. Massachusetts Bay Transportation Auth., No. CV 17-

12100-PBS, 2019 WL 2513863, at *4 (D. Mass. June 17, 2019).   In this case, as set forth in

detail below, there are no material facts in dispute to preclude entry in favor of Chief Lyver as a

matter of law.

#### B.  Chief Lyver Is Entitled to Summary Judgment On Morin's Claim Challenging G.L. c. 140, §§131(d)(ii)(D) and 131A Based on His Prior Criminal Conviction for a Weapons Offense.

Chief Lyver submits that summary judgment should enter in his favor as to Morin's

challenge to certain provisions of the Massachusetts Firearms Licensing Statutes, G.L. c. 140,

§§131(d)(ii)(D) and 131A, since said statutes are constitutionally valid as applied to Morin.

Where the Commonwealth has intervened in the case to argue the constitutionality of the

relevant statutory schemes, Chief Lyver expressly incorporates the Commonwealth's arguments

set forth in its Memorandum (Docket Entry 26) in his request that summary judgment enter in his

favor.

C.  Chief Lyver, Acting in His Official Capacity as Chief of Police for the Town of Northborough, Is Entitled to Judgment in His Favor as to Plaintiff Morin's 42 U.S.C. §1983 Claim.

In this case, Morin asserts that Chief Lyver violated his Second Amendment rights based on an explicit statutory disqualifier set forth in state law, G.L. c.140, §131(d)(ii)(D), resulting from his prior conviction for a firearms related offense in Washington, D.C. and seeks declaratory and injunctive relief and attorneys' fees against Chief Lyver pursuant to 42 U.S.C. §1983 as a result.  Morin has named Chief Lyver in his official capacity only, setting forth no claims against him in his individual capacity.  As a result, the Section 1983 claims against Chief Lyver in his official capacity should be treated as a claim against the Town, Kentucky v. Graham, 473 U.S. 159, 166 (1985), and such claims fail against Chief Lyver as a matter of law since Morin has failed to establish that his injury was caused by a municipal policy or custom so as to state a viable claim under Monell v. Department of Social Services, 436 U.S. 658, 691 (1978) ("a local government may not be sued under §1983 for an injury inflicted solely by its employees"); Board of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (governmental entity "may not be held liable under §1983 solely because it employs a tortfeasor").

It is well-established that to impose liability on the part of the Chief, Morin must satisfy two basic elements: first, that he was harmed by a constitutional violation[3]; and second, that the Town was responsible for that violation through something more than mere respondeat superior. Young v. City of Providence, 404 F.3d 4, 25-6 (1st Cir. 2005).  It is well-settled that, to establish municipal liability under Monell, the plaintiff must show that the alleged municipal custom or policy was the "moving force" behind the "particular deprivation" of which he is complaining.

---

[3] As noted, *supra*, Chief Lyver further asserts that the plaintiff has not adduced any evidence that G.L. c.140, §§131(d)(ii)(D) or 131A, are unconstitutional as a matter of law.  As noted, since the Attorney General's office has actively intervened in this case to defend the statute, however, Chief Lyver defers and incorporates the

"It is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the

municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the injury alleged.  That is, a plaintiff must show that

the municipal action was taken with the requisite degree of culpability and must demonstrate a

direct causal link between the municipal action and the deprivation of federal rights."  Bd. of

County Com'rs of Bryan County, Okl., 520 U.S. at 404; see also Foley v. City of Lowell, 948

F.2d 10, 14 (1st Cir. 1991).

Whether or not a plaintiff has stated a Section 1983 claim against a municipal entity

typically hinges on the extent to which that municipal entity was independently responsible for

the allegedly unconstitutional act.  See Snyder v. King, 745 F.3d 242, 247 (7th Cir. Mar. 11,

2014).  In answering that question, courts have focused on whether "there is a direct causal link

between a municipal policy or custom and the alleged constitutional deprivation."  City of

Canton v. Harris, 489 U.S. 378, 385 (1989); Lyver v. Bd. of Trs., 912 F.2d 917, 922 (7th

Cir.1990) ("[p]roximate causation between the municipality's policy or custom and the plaintiff's

injury must be present") (quoting Strauss v. City of Chicago, 760 F.2d 765, 767 (7th Cir.1985)).

As the Seventh Circuit Court of Appeals has held:

> When state law unequivocally instructs a municipal entity to produce binary
> outcome X if condition Y occurs, we cannot say that the municipal entity's
> 'decision' to follow that directive involves the exercise of any meaningful
> independent discretion, let alone final policymaking authority.  It is the statutory
> directive, not the follow-through, which causes the harm of which the plaintiff
> complains.

Snyder, 745 F.3d at 249 (holding that the plaintiff also could not obtain injunctive or declaratory

relief against the County Defendants in the same reason he cannot obtain monetary damages,

because of the failure to state a suit against them).

---

Commonwealth's position in this regard, as set forth in its Memorandum in Support of its Opposition/Cross-Motion

"To say that any such direct causal link exists when the only local government 'policy' at issue is general compliance with the dictates of state law is a bridge too far; under those circumstances, the state law is the proximate cause of the plaintiff's injury."  Id.at 247; Surplus Store and Exchange, Inc. v. City of Delphi, 928 F.2d 788, 791–92 (7th Cir.1991)("[i]t is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law.  If the language and standards from Monell are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality");[4] Whitesel v. Sengenberger, 222 F.3d 861, 872 (10th Cir.2000) (county cannot be liable for "merely implementing" a policy created at the state level); Familias Unidas v. Briscoe, 619 F.2d 391, 404 (5th Cir.1980) (municipal entity cannot be held liable for simply enforcing state law because the municipal policy in that instance "may more fairly be characterized as the effectuation of the policy of the State ... embodied in that statute, for which the citizens of a particular county should not bear singular responsibility").

In this case, Chief Lyver, as the duly authorized firearms licensing authority for the Town of Northborough, cannot be held liable under Monell since there is no evidence that the act complained of is the result of any Town of Northborough policy or custom.  In denying Morin's permit to purchase firearms application, neither the Town of Northborough nor Chief Lyver was following any custom or policy of the Town.  Rather, the Chief's non-discretionary decision denying Morin's permit to purchase was solely dictated by state law, G.L. c.140, §§131(d)(ii)(D) and 131A.  (Docket Entry 27, Commonwealth's Local Rule 56.1 Statement of Facts, ¶11).

_____

for Summary Judgment (Docket Entry 26).
[4] The First Circuit has addressed the Surplus Store decision briefly in a concurrence decision that positively cited the case.  See Yeo v. Town of Lexington, 131 F.3d 241, 257 (1st Cir. 1997) (Stahl, J., concurring).

Upon receipt of a firearms application, Chief Lyver is obligated to run a state and national criminal background check on firearms applicants and then he is <u>required</u> to deny any license for which the applicant is statutorily disqualified.[5]   <u>See</u> G.L. c. 140, §131(d)(ii)(D).   In this regard, the mandatory background check conducted on Morin revealed that he had been convicted of a firearms offense in October 2004 in Washington D.C. following his unlawful decision to transport a firearm across state lines and enter a federal building, the Smithsonian's American Museum of Natural History, with a firearm resulting in a sentence of 180 days. Specifically, Morin pled guilty to carrying a pistol without a license, possession of unregistered ammunition and possession of an unregistered firearm.  (Docket Entry 27, Commonwealth's Local Rule 56.1 Statement of Facts, ¶11).

Consequently, Morin is not qualified by state law to obtain the firearms license for which he applied.  G.L. c.140, §131(d)(ii)(D).  Under the statutory mandates set forth in G.L. c.140, §§131(d)(ii)(D) and 131A, as established by the Legislature, Chief Lyver had (and continues to have) <u>no</u> discretion or choice as to whether or not to grant or deny a license to carry or a permit to purchase if an individual has a statutory disqualifier such as in this case, as a result of a prior criminal conviction.  <u>See</u> G.L. c.140, §131(d)(i) (outlining when a License to carry must be denied by a local licensing authority).

Finally, to the extent Morin attempts to circumvent the explicit mandates of <u>Monell</u> by asserting that <u>Monell</u> is inapplicable to a claim seeking only equitable or declaratory relief (Complaint, p.7), such assertion is futile.  Relevant to this case, in 2010, the Supreme Court held in <u>Los Angeles Cnty., Cal.</u> v. <u>Humphries</u>, 131 S. Ct. 447, 451 (2010) that a municipality may face liability only for its <u>own</u> policies or customs that result in constitutional injury and whether an act or omission can be attributed to a municipality does not depend on the form of relief

---

[5] A true and accurate copy of the 2018 application for the Court's convenience is attached hereto as **Exhibit 1**.

7

sought.  Specifically, the Supreme Court held as follows, "[w]e conclude that *Monell*'s holding

applies to § 1983 claims against municipalities for prospective relief as well as to claims for

damages."  Id.  "For whether an action or omission is a municipality's 'own' has to do with the

nature of the action or omission, not with the nature of the relief that is later sought in court.

Id. at 453.  This circuit has also recognized this principle.  See Watchtower Bible & Tract Soc'y

of New York, Inc. v. Municipality of San Juan, 773 F.3d 1, 9 (1st Cir. 2014) (applying *Monell* to

equitable claims).

　　　In Humphries, the Supreme Court evaluated whether the "policy or custom" requirement

also applies when plaintiffs seek prospective relief, such as an injunction or declaratory

judgment.  Id. at 449.  Specifically, the plaintiffs were accused of child abuse in California but

later exonerated.  Despite their exoneration, under California law, their names were added to a

Child Abuse Central Index, where they remained visible to various state agencies for a minimum

of ten years.  Id.  The statute did not set forth any procedure to review whether a previously filed

report was unfounded or allow individuals to challenge their inclusion in the Index.  Id.

Following their exoneration, the plaintiffs sought to have their names removed from the Index,

but the Los Angeles Sheriff's Department refused.  Id.  As a result, they filed suit against the

Attorney General of California, the Los Angeles Sheriff's Department, two detectives in the

Sheriff's Department and the County of Los Angeles[6] for damages and injunctive relief.  Id. at

449-450.  During the litigation, Los Angeles argued that it was a state policy, not a county policy

that brought about the plaintiffs' deprivation.  Id. at 451.[7]

　　　In reversing the Ninth Circuit Court of Appeals decision, as noted, the Supreme Court

held that the Monell standard applies to Section 1983 claims against municipalities for

---

[6] The county of Los Angeles is a municipal entity.

prospective relief as well as to claims for damages.  Id. at 451.  The Supreme Court also rejected any relief-based bifurcation, and reasoned that Monell's "logic also argues against any relief-based bifurcation…[t]he 'policy or custom' requirement rests upon that distinction and embodies it in law.  To find the requirement inapplicable where prospective relief is at issue would undermine Monell's logic."  Id. at 453.  Indeed, the Supreme Court held that "applying Monell's requirement to prospective relief claims will leave some set of ongoing constitutional violations beyond redress" and expressly held that Monell's "policy or custom" requirement applies in Section 1983 cases irrespective of whether a party seeks monetary damages or prospective relief. Id. at 453-454.

As such, it is axiomatic that Chief Lyver is not liable to Morin under Monell since there was no "policy or custom" of the Town of Northborough that caused Morin to be deprived of a federal right.  Chief Lyver, acting as the Town's firearms licensing authority, merely complied with the Commonwealth's non-discretionary statutory mandates in G.L. c.140, §§131(d)(ii)(D) and 131A.  Therefore, since there are no facts to support Morin's Section 1983 claim for relief against Chief Lyver, he is entitled to judgment in its favor.

D. Chief Lyver Is Entitled to Judgment in His Favor As to Morin's Declaratory Judgment Claim.

Morin alleges in the Complaint that he is seeking relief pursuant to 28 U.S.C. §§2201-2202.  (Complaint, ¶4).  To the extent that Morin asserts that he does not need to meet the Monell custom and policy requirement because he also has a claim pursuant to 28 U.S.C. §2201 (Complaint, ¶4), the Declaratory Judgment Act, such argument against Chief Lyver is futile. The plaintiff's claim pursuant to the Declaratory Judgment Act is barred by the more specific

---

[7] Los Angeles also argued, as does Chief Lyver in this case, that he is not responsible for attorneys' fees under 42 U.S.C. §1988.  Humphries, 131 S.Ct. at 450.

9

cause of action provided in Section 1983.  It is axiomatic that Morin cannot circumvent the

specific requirement for sustaining a Section 1983 action by pleading under the more general

Declaratory Judgment Act.  Allowing Morin to proceed in such a manner would frustrate the

very purpose of the custom and policy requirement, which the Supreme Court has acknowledged

as being critical in this context.  See Humphries supra.  Therefore, any such attempt is unavailing

and Chief Lyver is entitled to judgment as a matter of law for this additional reason.

## III.    CONCLUSION

WHEREFORE, Town of Northborough Police Chief Lyver respectfully requests that all

claims against him be dismissed and judgment enter in his favor.

<div style="margin-left:50%">

DEFENDANT,

WILLIAM LYVER, Chief of the Town of
Northborough Department of Police

By his attorneys,

/s/ Janelle M. Austin
Janelle M. Austin (BBO# 666835)
Brian W. Riley (BBO# 555385)
KP Law, P.C.
  Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
jaustin@k-plaw.com
briley@k-plaw.com

</div>

<div style="text-align:center">CERTIFICATE OF SERVICE</div>

I, Janelle M. Austin, certify that the above document will be sent electronically to the registered
participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be served upon any party or
counsel of record who is not a registered participant of the Court's ECF system upon notification by the Court of
those individuals who will not be served electronically. /s/ Janelle M. Austin

668462/NBOR/0155